Filed 7/27/15  P. v. Alexander CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>LARRY D. ALEXANDER,<br><br>        Defendant and Appellant. | C073170<br><br>(Super. Ct. No. SF082949A) |

Defendant Larry Alexander, an inmate serving an indeterminate life sentence imposed pursuant to the three strikes law (Pen. Code, §§ 1170.12, subds. (a)-(d) & 667, subds. (b)-(i)),[1] appeals from the trial court's denial of his petition to recall his sentence and for resentencing under section 1170.126, which became effective November 7, 2012, after the voters approved Proposition 36, the Three Strikes Reform Act of 2012 (§§ 667, 1170.12, 1170.126; Prop. 36, as approved by voters, Gen. Elec. (Nov. 6,

---

[1]    Undesignated statutory references are to the Penal Code.

1

2012)) (the Act). Section 1170.126 "created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety." (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168 (*Yearwood*).) The trial court concluded resentencing would pose an unreasonable risk of danger to public safety.

On appeal, defendant asserts: (1) where a three strike inmate, such as defendant, satisfies the eligibility requirements for resentencing under the Act, the presumptive maximum sentence is effectively reduced to a two strike term, requiring the prosecution to prove resentencing would pose an unreasonable risk of danger to public safety; (2) the Sixth Amendment to the federal Constitution requires the fact of unreasonable dangerousness be proven to a jury beyond a reasonable doubt; (3) the due process and equal protection clauses of the Fourteenth Amendment also require the prosecution to prove unreasonable dangerousness beyond a reasonable doubt, or at the very least, by clear and convincing evidence; (4) even if the appropriate standard is preponderance of the evidence, the prosecution conceded defendant should be resentenced under the Act, and therefore did not carry its burden of proving resentencing would pose an unreasonable risk of danger to public safety; (5) the trial court erroneously placed the burden of proof on defendant to prove resentencing would not pose an unreasonable risk of danger; (6) the trial court erred by denying defendant's petition based on improper considerations; (7) defendant was denied a meaningful hearing on his petition, in violation of his due process rights under the Fourteenth Amendment; and (8) cumulative prejudice requires reversal.

2

After the briefing was submitted in the instant appeal, the voters approved Proposition 47, effective November 5, 2014, which, among other things, "[r]equire[s] misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession, unless the defendant has prior convictions for specified violent or serious crimes." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 3, subd. (3), p. 70.) Proposition 47 also added section 1170.18 to the Penal Code, under which "[a] person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section . . . had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case [and] request resentencing . . . ." (§ 1170.18, subd. (a).) If subdivision (a) of this provision is satisfied, subdivision (b) requires recall and resentencing "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).) Subdivision (c) then provides: "*As used throughout this Code*, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c), italics added.) We requested supplemental briefing addressing the question of whether this definition applies retroactively to this case, in which defendant seeks recall and resentencing under Proposition 36 rather than Proposition 47, and if so, whether we are required to remand the matter to the trial court for reconsideration in light of the new definition. Having reviewed the supplemental briefs submitted by the parties, we conclude in part I of the discussion that Proposition 47's definition of "unreasonable risk of danger to public safety" does not apply retroactively to this case.

Turning to the multitude of assertions raised in defendant's appeal, we conclude the dispositive issue is whether the trial court's finding that resentencing would pose an unreasonable risk of danger to public safety is supported by substantial evidence. In order to answer that question, we must first determine the appropriate standard of proof. Thus, in part II of the discussion, we conclude the prosecution bears the burden of proving dangerousness by a preponderance of the evidence, following *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279 (*Kaulick*), and rejecting defendant's arguments that eligibility for resentencing under the Act effectively reduces a defendant's sentence to a statutorily-presumed second strike sentence, making the finding of dangerousness a factor that enhances the sentence, and therefore the federal Constitution requires dangerousness to be proven to a jury beyond a reasonable doubt, or at the very least, to the trial court by clear and convincing evidence. In part III, we conclude substantial evidence supports the trial court's finding, by a preponderance of the evidence, that resentencing defendant would pose an unreasonable risk of danger to public safety. In part IV, we reject defendant's remaining contentions. The trial court did not place the burden of proof on defendant or deny the petition based on improper considerations. Nor was defendant denied a meaningful hearing. Finally, there being no error, prejudicial or otherwise, defendant's assertion of cumulative prejudice must also fail.

## BACKGROUND

In 2002, defendant was convicted by jury of transportation of cocaine and possession of cocaine base for sale. He admitted two prior serious felony convictions within the meaning of the three strikes law and was sentenced to state prison to serve an indeterminate term of 25 years to life. Defendant's prior strike

4

convictions were for robbery. (*People v. Alexander* (Nov. 28, 2005, C041257) [nonpub. opn.].)[2]

In 2010, while in prison, defendant was convicted of possession of a sharp instrument while confined in a penal institution and sentenced to serve a consecutive determinate term of six years. Defendant's prison disciplinary record includes 35 violations, including 15 violations for assaultive or threatening conduct.

In November 2012, California voters approved Proposition 36. "The Act changes the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment" (§§ 667, 1170.12) and "also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126.)" (*Yearwood*, *supra*, 213 Cal.App.4th at pp. 167-168.)

The same month, defendant filed a petition to recall his sentence and for resentencing under section 1170.126. The memorandum of points and authorities attached to the petition simply argued defendant was eligible for recall and resentencing under the Act, without commenting on whether resentencing would pose an unreasonable risk of danger to public safety. The prosecution also filed a memorandum of points and authorities, in which it agreed there was "no statutory bar to resentencing," but expressed some concern as to whether resentencing would pose such a risk. Specifically, the

---

**2**     We take judicial notice of our unpublished opinion in defendant's prior appeal (*People v. Alexander, supra,* C041257). (Evid. Code, § 452, subd. (d)(1); *Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, 1433, fn. 2.)

prosecution noted "his combative conduct in prison and his [possession of a weapon by an inmate] conviction." Nevertheless, the prosecution stated it was "aware of no indication that [defendant] would pose an unreasonable risk of danger to public safety if resentenced" and recommended he be resentenced to serve the upper term of five years for each of his commitment offenses, doubled to 10 years (with execution of sentence stayed as to one of these terms under section 654). Thereafter, defendant filed a supplemental memorandum, arguing for the middle term of four years, doubled to eight years.

At the hearing on the petition, after allowing defendant to make a statement, the trial court found resentencing would pose an unreasonable risk of danger to public safety and denied the petition. The trial court first pointed out defendant had two prior convictions for robbery, one of which "involved a gun." The trial court then explained it had a "grave concern" regarding defendant's testimony in the underlying trial, specifically, that he was "comfortable" with the fact he tried to force an "older lady" to pay him twice the amount of money he had loaned to her, "which is loan sharking," and he "would have split" at a high rate of speed had he known he was being pulled over for "something other than a traffic violation." Turning to defendant's conviction for possession of a weapon while incarcerated, the trial court stated: "That's a problem. And the issue is this: You can't -- and I hear a lot of doctors testify about this -- many psychologists and psychiatrists will say the best predictor of future performance is performance in the past, okay. And in your situation, you have been in prison a long time, and you pick up a whole new case with a shank, okay. That's -- that's of grave concern."

The trial court then went through defendant's disciplinary record while in prison, noting 35 violations, including 15 violations for assaultive or threatening conduct (described variously as "fight resulting in use of chemical agents" (October 17, 2012),

6

"fighting in the yard" (November 20, 2005), "battery on an inmate" (September 20, 2001, June 4, 2002, December 29, 2006, February 27, 2007, and December 8, 2007), "battery" (November 23, 1997), "mutual combat" (September 7, 1998, July 20, 2002, March 27, 2003, and November 4, 2003), "participation in a riot" (December 29, 2006), "threats to a peace officer" (February 21, 2006), and "threatening staff" (April 2, 2000)). The trial court also noted a segregated housing unit (SHU) assessment describing defendant as " 'a disruptive inmate who endangers the safety of others,' " and commented: "In an institution, okay. Which concerns me, because why would it change out on the street if in an institution you're so hard to control?"

The trial court concluded: "[G]iven that lengthy history, and really nothing to counterbalance it, I do believe you are an unreasonable risk of danger . . . to the public. And in good conscience, I can't grant your petition. I think there's ample evidence here that you just haven't learned that much and just haven't learned to calm down and be a reasonable person. Your record is replete with incidents of battery and assault, and they have grave concerns about the security of the institution and other people because of your misbehavior." Defendant's attorney pointed out he had "made progress toward his GED," to which the trial court responded: "That's okay. But that won't counterbalance 35 incidents. And a lot of them are assaultive behavior and just gross misconduct."

## DISCUSSION

### I

#### *Retroactivity of Subdivision (c) of Section 1170.18*

We conclude the definition of "unreasonable risk of danger to public safety" in Proposition 47 does not apply retroactively to a defendant whose petition for resentencing under the Act was decided before the effective date of Proposition 47.

"No part of [the Penal Code] is retroactive, unless expressly so declared." (§ 3.) The California Supreme Court "ha[s] described section 3, and its identical counterparts in

7

other codes (e.g., Civ. Code, § 3; Code Civ. Proc., § 3), as codifying 'the time-honored principle . . . that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application.'" (*People v. Brown* (2012) 54 Cal.4th 314, 319 (*Brown*).)

"In interpreting a voter initiative, we apply the same principles that govern our construction of a statute." (*People v. Lopez* (2005) 34 Cal.4th 1002, 1006.) Proposition 47 is silent as to its retroactive application to proceedings under the Act. Similarly, the analysis of Proposition 47 by the legislative analyst, the arguments in favor of Proposition 47, and the arguments against Proposition 47 are silent as to the retroactive application of Proposition 47 to proceedings under the Act. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), pp. 34-39.) Thus, there is "no clear and unavoidable implication" of retroactivity that "arises from the relevant extrinsic sources." (*Brown, supra*, 54 Cal.4th at p. 320.)

Nevertheless, defendant contends the principle enunciated in *In re Estrada* (1965) 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 (*Estrada*) compels a finding of retroactivity here. Not so. In *Estrada*, our Supreme Court stated: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*Estrada, supra*, 63 Cal.2d at p. 745.) This includes "acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Ibid*.) Accordingly, a statute lessening punishment is presumed to apply to all cases not yet reduced to final judgment on the statute's effective date, unless there is a "saving clause"

8

providing for prospective application. (*Id.* at pp. 744–745, 747–748.) *Estrada* does not apply here because applying the definition of "unreasonable risk of danger to public safety" in Proposition 47 to petitions for resentencing under the Act does not reduce punishment for a particular crime. Rather, it arguably changes the lens through which the dangerousness determinations under the Act are made. Using the words of *Brown*, that "does not represent a judgment about the needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent." (*Brown, supra*, 54 Cal.4th at p. 325, 142 Cal.Rptr.3d 824, 278 P.3d 1182.) As our Supreme Court explained in *Brown*, "*Estrada* is . . . properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." (*Brown, supra*, 54 Cal.4th at p. 324.)

Expanding the *Estrada* rule's scope of operation here to the definition of "unreasonable risk of danger to public safety" in Proposition 47 in a petition for resentencing under the Act would conflict with section 3's default rule of prospective operation where there is no evidence in Proposition 47 that this definition was to apply retrospectively to petitions for resentencing under the Act and would be improper given that the definition of "unreasonable risk of danger to public safety" in Proposition 47 does not reduce punishment for a particular crime. For these reasons, we conclude the definition of "unreasonable risk of danger to public safety" in Proposition 47 does not apply retroactively to a defendant such as the one here whose petition for resentencing under the Act was decided before the effective date of Proposition 47.

## II

### *Standard of Proof for Dangerousness Determination*

Defendant contends the Sixth Amendment to the federal Constitution requires the fact of unreasonable dangerousness be proven to a jury beyond a reasonable doubt. This contention is premised on the argument, made earlier in the opening brief, that because defendant satisfies the eligibility requirements for resentencing under the Act, the presumptive maximum sentence is effectively reduced to a second strike term. He is mistaken.

In *Kaulick*, *supra*, 215 Cal.App.4th 1279, our colleagues at the Second Appellate District rejected an identical argument and held the dangerousness determination does not implicate a defendant's Sixth Amendment rights. (*Id*. at p. 1305.) After discussing the relevant decisions from the United States Supreme Court, which preclude a trial court from imposing a sentence above the statutory maximum based on a fact, other than a prior conviction, not found true by a jury beyond a reasonable doubt (see *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435; *Blakely v. Washington* (2004) 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403; *Cunningham v. California* (2007) 549 U.S. 270, 274-275, 127 S.Ct. 856, 166 L.Ed.2d 856), the court rejected the defendant's argument that "once the trial court concluded that he was *eligible* for resentencing under the Act, he was subject *only* to a second-strike sentence, *unless* the prosecution established dangerousness." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1302.) The court explained that "section 1170.126, subdivision (f) does not state that a petitioner eligible for resentencing has his [or her] sentence immediately recalled and is resentenced to either a second strike term (if not dangerous) or a third strike indeterminate term (if dangerousness is established). Instead, the statute provides that he [or she] 'shall be resentenced' to a second-strike sentence 'unless the court . . . determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.'

10

In other words, dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all.  If the court finds that resentencing a prisoner would pose an unreasonable risk of danger, the court does not resentence the prisoner, and the petitioner simply finishes out the term to which he or she was originally sentenced." (*Id*. at pp. 1302-1303.)

The *Kaulick* court continued:  "The maximum sentence to which [the defendant], and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced.  While Proposition 36 presents him with an opportunity to be resentenced to a lesser term, unless certain facts are established, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced.  As such, a court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1303.)  Accordingly, like the situation in *Dillon v. United States* (2010) 560 U.S. 817 (*Dillon*), where the Supreme Court held sentence-reduction proceedings authorized by title 18 of the United States Code, section 3582(c)(2), "do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt" (*Dillon, supra*, at pp. 828-829), section 1170.126 "provides for a proceeding where the original sentence may be modified downward.  Any facts found at such a proceeding, . . . do not implicate Sixth Amendment issues." (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1304-1305.)

The *Kaulick* court then concluded, "the proper standard of proof is preponderance of the evidence," explaining:  "Evidence Code section 115 provides that, '[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence.'  There is no statute or case authority providing for a greater burden, and [the

11

defendant] has not persuaded us that any greater burden is necessary. In contrast, it is the general rule in California that once a defendant is eligible for an increased penalty, the trial court, in exercising its discretion to impose that penalty, may rely on factors established by a preponderance of the evidence. [Citation.] As dangerousness is such a factor, preponderance of the evidence is the appropriate standard." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1305.)

We agree with the foregoing analysis and reject defendant's argument that the *Kaulick* court's reliance on *Dillon*, *supra*, 560 U.S. 817 was misplaced. Nor are we persuaded by his assertion that *Alleyne v. United States* (2013) ___ U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (*Alleyne*), "clearly controls the situation." There, the United States Supreme Court held any fact that increases the mandatory minimum sentence for a crime must be submitted to the jury and proven beyond a reasonable doubt. (*Id*. at p. 2155.) It is defendant's reliance on *Alleyne* that is misplaced. A finding that resentencing would pose an unreasonable risk of danger to public safety does not increase the mandatory minimum sentence for a third strike defendant's crime. Like the situation in *Dillon*, it merely precludes a downward modification of the already-imposed third strike sentence.

We also reject defendant's additional argument that the Fourteenth Amendment to the federal constitution requires proof beyond a reasonable doubt. He argues the hearing on dangerousness places "his freedom for the rest of his life potentially at stake," and therefore, "his interests in the outcome are every bit as great" as those of an individual facing involuntarily commitment as a narcotics addict (see *People v. Thomas* (1977) 19 Cal.3d 630, 637) or as "gravely disabled" under the Lanterman-Petris-Short Act (see

*Conservatorship of Roulet* (1979) 23 Cal.3d 219, 225-226).[3] "In each of those situations," defendant continues, "the California Supreme Court found that the requisite finding justifying incarceration should be found under a beyond a reasonable doubt standard of proof." Again, we disagree with defendant's premise that section 1170.126 makes a second strike term the presumptive maximum. Defendant is subject to the third strike term based on (1) the jury's finding, beyond a reasonable doubt, that he transported cocaine and possessed cocaine base for sale, and (2) his admission that he had two prior robbery convictions, subjecting him to sentencing under the three strikes law. Thus, unlike the involuntary commitment situations, the dangerousness hearing contemplated by section 1170.126 does not place a defendant's liberty at stake. That liberty has already been lost.

Nor does defendant possess "a liberty interest in a new sentence," i.e., the second strike sentence. Under section 1170.126, he is entitled to such a sentence only if he

---

[3] Defendant also cites *Conservatorship of Hofferber* (1980) 28 Cal.3d 161 (*Hofferber*) for the proposition that an individual may be committed under the Lanterman-Petris-Short Act for being "dangerous," which must be proved beyond a reasonable doubt. However, in that case, our Supreme Court held "that every judgment creating or renewing a conservatorship *for an incompetent criminal defendant* under [Welfare and Institutions Code] section 5008, [former] subdivision (h)(2) must reflect written findings that, by reason of a mental disease, defect, or disorder, the person represents a substantial danger of physical harm to others." (*Id.* at pp. 176-177, italics added.) This subdivision, now subdivision (h)(1)(B), defines "gravely disabled" to include a defendant who is found to be mentally incompetent under section 1370 and other facts are also found to exist. (See Welf. & Inst. Code, § 5008, subd. (h)(1)(B).) In *Hofferber*, our Supreme Court read a dangerousness requirement into this definition of "gravely disabled" in order to comport with *Jackson v. Indiana* (1972) 406 U.S. 715, and *In re Davis* (1973) 8 Cal.3d 798. (*Hofferber*, *supra*, 28 Cal.3d at pp. 174-175.) Nevertheless, we do agree an incompetent criminal defendant's "dangerous mental condition must be found beyond a reasonable doubt." (*Id.* at p. 178.)

clears the dangerousness hurdle (see *Kaulick*, *supra*, 215 Cal.App.4th at pp. 1302-1303), which he did not do.

Finally, we also reject defendant's argument that the dangerousness finding "should at least be made upon a showing of clear and convincing evidence." This argument is based on Ninth Circuit precedent holding that "when a sentencing factor has an extremely disproportionate impact on the sentence relative to the offense of conviction, due process requires that the government prove the facts underlying the enhancement by clear and convincing evidence." (*United States v. Jordan* (9th Cir. 2001) 256 F.3d 922, 930; see also *United States v. Pineda-Doval* (9th Cir. 2010) 614 F.3d 1019, 1041.) Aside from being non-binding authority, these cases are inapposite since they deal with proving a factor that *enhances* a sentence. Again, in the context of section 1170.126, a finding that resentencing a defendant to a second strike term would pose an unreasonable risk of danger to public safety does not enhance that defendant's sentence because he or she is already subject to the third strike term. Instead, assuming eligibility, a finding that resentencing would *not* pose such a risk, leads to a *lowering* of the third strike term to a second strike term.

In sum, we conclude the prosecution had the burden of proving that resentencing defendant would pose an unreasonable risk of danger to public safety by a preponderance of the evidence, following *Kaulick*, *supra*, 215 Cal.App.4th 1279, and reject defendant's arguments that eligibility for resentencing under the Act effectively reduced his sentence to a statutorily-presumed second strike sentence, making the finding of dangerousness a factor that enhances the sentence, and therefore the federal Constitution required dangerousness to be proven to a jury beyond a reasonable doubt, or at the very least, by clear and convincing evidence.

14

## III

### *Sufficiency of the Evidence to Support Dangerousness Finding*

Defendant asserts the prosecution "conceded . . . that [he] was eligible for resentencing and should be resentenced," and "thus did not meet the burden of proof, under any standard," that resentencing him would pose an unreasonable risk of danger to public safety. We disagree.

Section 1170.126, subdivision (g), provides that, in exercising its discretion in determining whether resentencing would pose such a risk, the trial court may consider: "(1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."

Here, while the memorandum of points and authorities filed by the prosecution in response to defendant's petition stated that "the People are aware of no indication that [defendant] would pose an unreasonable risk of danger to public safety if resentenced," immediately before this proclamation of ignorance, the prosecution pointed out two indications that resentencing defendant would pose such a risk, i.e., "his combative conduct in prison and his [possession of a weapon by an inmate] conviction." Based on these concerns, and others, the trial court found resentencing defendant would pose an unreasonable risk of danger to public safety. Specifically, as previously noted, the trial court pointed out one of defendant's prior strikes "involved a gun." The trial court also explained it had "grave concern" regarding defendant's testimony in the underlying trial and the fact that he "pick[ed] up a whole new case with a shank" while in prison. The trial court then went through defendant's prison disciplinary record, noting 35 violations,

including 15 violations for assaultive or threatening conduct, and also noting an SHU assessment describing defendant as " 'a disruptive inmate who endangers the safety of others.' "

We conclude defendant's prison disciplinary record, and the fact he was convicted in 2010 of possession of a sharp instrument by an inmate, is more than sufficient to establish, by a preponderance of the evidence, that resentencing would pose an unreasonable risk of danger to public safety. However, while defendant's prison records were subpoenaed, received from the institution, and admitted into evidence, they did not make their way into the record on appeal. "'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citation.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *People v. Carter* (2010) 182 Cal.App.4th 522, 531, fn. 6 ["appellant's burden on appeal to present an adequate record for review and affirmatively to demonstrate error"].) We therefore presume these records support the trial court's detailed summary of defendant's assaultive and threatening conduct while incarcerated, including the 2010 conviction. Nor does defendant directly challenge the trial court's summary on appeal. Based thereon, we conclude sufficient evidence supports the trial court's determination that resentencing defendant would pose an unreasonable risk of danger to public safety.

## IV

### *Remaining Contentions*

Defendant's remaining contentions also fail. Certain statements made by the trial court in denying defendant's petition—i.e., there was "really nothing to counterbalance" defendant's lengthy record of assaultive and threatening behavior, despite the fact the

court "really looked for positive things [to] balance it out"—does not indicate the trial court placed the burden on defendant to prove resentencing would not pose an unreasonable risk of danger to public safety.

Nor did the trial court deny the petition based on improper considerations. Defendant compares the trial court's statements during the hearing on his petition to those made at the hearing on his earlier *Romero* motion. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.) He argues this comparison "demonstrates that the trial court utilized almost identical language in evaluating whether [he] should originally be sentenced to a life sentence and then whether he should remain under a life sentence after Proposition 36." This is neither surprising nor troubling. In deciding whether to dismiss a prior strike under *Romero*, the trial court considers whether the defendant may be deemed outside the spirit of the three strikes law "in light of the nature and circumstances of his [or her] present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) Similarly, in deciding whether resentencing a defendant would pose an unreasonable risk of danger to public safety under the Act, the trial court considers the defendant's "criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes." (§ 1170.126, subd. (g)(1).) Because the present felonies for *Romero* purposes are part of the defendant's "criminal conviction history" at the time of the subsequent recall petition, section 1170.126, subdivision (g)(1), is nearly identical to the first two *Williams* factors, i.e., the nature and circumstances of the present felonies and the nature and circumstances of the prior strikes. Criminal history is also part of a defendant's background under *Williams*. (See *People v. McGlothin* (1998) 67 Cal.App.4th 468, 475.)

17

Of course, the focus is different under the two analyses.  Under *Williams*, the focus is on whether the defendant should be deemed outside the spirit of the three strikes law.  (*Williams*, *supra*, 17 Cal.4th at p. 161.)  Under section 1170.126, the focus is on whether resentencing the defendant would pose an unreasonable risk of danger to public safety.  (*Yearwood*, *supra*, 213 Cal.App.4th at pp. 167-168.)  However, because the considerations relevant to each determination overlap, we are not troubled by the similarities in the transcripts of the two hearings.

Defendant also complains the trial court relied on his trial testimony, specifically, that he was "comfortable" with the fact he tried to force an "older lady" to pay him twice the amount of money he had loaned to her, "which is loan sharking," and he "would have split" at a high rate of speed had he known he was being pulled over for "something other than a traffic violation."  Defendant argues neither loan sharking nor evading an officer is a dangerous or serious offense and "cannot prove that he is an unreasonably dangerous individual."  Even if we were to accept this argument, our review of the hearing on defendant's recall petition convinces us the trial court's biggest concern was defendant's "disciplinary record and record of rehabilitation while incarcerated."  (§ 1170.126, subd. (g)(2).)  Defendant's attempt to mitigate his disciplinary record notwithstanding, this factor alone is enough to support the trial court's decision to deny the recall petition.

We also reject defendant's assertion that he was denied a meaningful hearing simply because the prosecution "conceded" in its memorandum in response to his petition that he "was eligible for resentencing and should be resentenced."  Defendant argues he "was not on notice that the court would ignore the stated intention of the People to concede the right to resentencing under Proposition 36."[4]  This argument has no merit

---

[4]  Defendant also asserts the trial court "cut off defense counsel" when counsel attempted to present evidence.  The reporter's transcript does not support defendant's

18

whatsoever. Defendant was present at the hearing, with counsel, and was given an opportunity to address the court. Section 1170.126, subdivision (f), provides "the court"—not the prosecution—with discretion to determine whether resentencing would pose an unreasonable risk of danger to public safety. While the prosecution did not oppose resentencing, the plain and unambiguous language of the statute, coupled with defendant's disciplinary record while incarcerated, should have placed him on notice that the trial court had discretion, and might use this discretion to find resentencing would pose such a risk of danger to public safety.[5]

---

version of the hearing. Defense counsel did not attempt to introduce evidence but instead pointed out the positive information in the prison disciplinary record, including defendant's progress toward a GED. Defendant also states defense counsel requested that the trial court review the matter at a later time and the trial court stated defendant "had a 'terrible record' and did not believe additional positive things would 'balance it out.'" Defendant misstates the record by selectively quoting from the trial court's statements. In response to defense counsel asking if the trial court would agree to review this matter in a year or so, the trial court responded: "Well, we'll see. I mean, but I've got to see -- the kind of progress you're giving -- you're not jammed up like this. Because this is a terrible record, and I don't think a year or two is enough. I mean, you've got to get -- put all these things behind you."

[5] During oral argument, defendant's appellate counsel argued trial counsel was unprepared for the hearing and claimed to have raised ineffective assistance of counsel in her briefing on appeal. However, while ineffective assistance of trial counsel was raised in the opening brief, the specific argument made was that we should review each contention on the merits even if we concluded the contention was forfeited by trial counsel's failure to adequately object because such failure would amount to ineffective assistance of counsel. We have not concluded any of defendant's claims are forfeited, and therefore have no need to address this specific ineffective assistance argument. This argument is improperly expanded upon in defendant's reply brief, in which it is argued: "[R]espondent fails to analyze appellant's ineffective assistance of counsel claim in any manner. Obviously, a fair hearing requires counsel who is prepared to present evidence and witnesses to support appellant's analysis he should be entitled to resentencing under Proposition 36. Respondent's assertion that counsel had the opportunity to present evidence, where counsel specifically asked for more time to do that very thing and was denied that opportunity, cannot demonstrate that appellant was adequately represented or that the hearing was fair and within the constitutional requirements of due process under

Finally, there being no error, prejudicial or otherwise, defendant's assertion of cumulative prejudice must also fail.

DISPOSITION

The judgment (order denying defendant's recall petition under Penal Code section 1170.126) is affirmed.


                                          HOCH          , J.


We concur:


    NICHOLSON    , Acting P. J.


        ROBIE        , J.

---

the Fifth, Sixth, and 14th Amendments."  As we have explained, the ineffective assistance of counsel argument raised at pages 42-47 of the opening brief did not relate to the due process claim at all, except to the extent we deemed that claim forfeited.