[No. B210203. Second Dist., Div. Eight. Feb. 26, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
MYLES S. CARTER, Defendant and Appellant.

**COUNSEL**

Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan Sullivan Pithey and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**RUBIN, J.**—Defendant Myles S. Carter appeals from his conviction of second degree robbery. He contends the trial court erred in (1) denying his *Marsden* motion;[1] (2) denying his motion to suppress; and (3) failing to give pretrial instructions. We affirm.

## FACTS

Viewed in accordance with the usual rules on appeal (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 [75 Cal.Rptr.3d 289, 181 P.3d 105]), the evidence established that about 3:45 p.m. on December 14, 2007, Elizabeth Tamayo was working alone at the front counter of a fast-food restaurant in Whittier, while all of her coworkers were working in the back of the restaurant. Defendant entered the restaurant wearing blue jeans, a black hooded sweater and sunglasses; his hands were in the front pockets of the sweater and the hood was pulled up and down over his forehead. He handed Tamayo a note that read, "Give me all the money and don't say anything." Understanding that she was being robbed, Tamayo gave defendant all of the money in two cash registers. Defendant put the money in his pockets, retrieved his note and walked out of the restaurant without ever having said a word.

Later that afternoon, police brought Tamayo to a location less than a mile from the restaurant to identify a suspect. Tamayo saw defendant about 15 feet away and identified him as the person who robbed her. Tamayo was confident of her identification even though defendant was wearing a white T-shirt and not a black sweater. About two weeks later, Tamayo identified defendant again in court.

## PROCEDURAL BACKGROUND

At his preliminary hearing on December 31, 2007, defendant was represented by Deputy Public Defender Lynn Storing. But at his arraignment on January 14, 2008, defendant was represented by Deputy Public Defender Robert Noguchi. After Noguchi entered a not guilty plea on defendant's behalf, the following colloquy ensued: "THE DEFENDANT: I want a *Marsden* hearing. [¶] THE COURT: Did you just talk to him right now? [¶] MR. NOGUCHI: I talked to him downstairs. [¶] THE COURT: Oh, okay. [¶] How do you know you want to get rid of him if you just talked to him for a few minutes? What do you want? Do you want another lawyer? Is that what you want? [¶] THE DEFENDANT: I would like to—conflict of interest, sir. I would like to represent myself. [¶] THE COURT: Oh, you want to represent

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*).

yourself? [¶] THE DEFENDANT: I would like to, yes. Represent myself. My 6th Amendment. [¶] THE COURT: That's the right one. [¶] THE DEFEND-ANT: Okay." After warning defendant that representing himself was not in his best interest, the trial court observed: "[L]ike you said, you have a constitutional right to do it. So, if that is really what you want to do. [¶] THE DEFENDANT: Yes, what I want to." Whereupon the trial court relieved Noguchi and granted defendant's motion to represent himself.

Defendant represented himself at the March 12, 2008 hearing on his motion to suppress evidence obtained as a result of an unlawful traffic stop. After denying the motion, the trial court granted defendant's request to have counsel again appointed. The public defender's office was reappointed, with Attorney Craig Purcell appearing for defendant. The matter was continued to April 9, 2008. On that date, defendant was once again represented by Deputy Public Defender Noguchi. The matter was continued twice more.

On May 21, 2008, Noguchi announced that defendant was asking for a *Marsden* hearing. At the hearing which followed, defendant explained that since Noguchi had been representing him he had not done what defendant had asked him to do.[2] Defendant explained that "as far as . . . interviewing witnesses and talking to the victims and getting statements from them. He hasn't—I just don't feel like he is representing me to the fullest of his capabilities. [¶] I think there is a conflict, a serious conflict of interest between myself and my attorney, and I would like, would like to dismiss him as my, my attorney." Noguchi responded that he talked to the investigator that morning and that the investigator needed a few more days to complete the interviews. Defendant complained that Noguchi was "dragging his feet. He is not, you know, he is not proceeding to the fullest extent of his capabilities. I asked him to file motions that I have, you know, I have done research on I feel like, you know, would really help my cause, would help the case, you know, but he, he says he is not going to do it. [¶] And I just feel like he hasn't done anything." Defendant said he wanted Noguchi to file a motion to set aside the information "or motions pursuant to the no evidence rule. There is no evidence that support certain elements of the charged offense. [¶] I do qualify for the lesser included, and I asked him, you know, to—" The trial court explained that the motions to which defendant referred were motions that were properly made during the trial, not before the trial. In response to the trial court's inquiry whether there was anything else, defendant stated: "I just, you know, really the main thing that was really just, you know, I had a problem with was just the fact that my first, when he was first assigned to my case I asked him to get, you know, interview witnesses and it just now happened, you know, over 90 days later, along with, you know, you know,

---

[2] Defendant said that Noguchi had been representing him for 90 days, but the trial court clarified that Noguchi had been representing defendant for just 45 days.

during the visit, via monitored visits, you know, it has been we are just arguing back and forth not making any progress at all." Defendant concluded: "I just feel that Mr. Noguchi's attitude it's not going to be productive at all. I just don't feel like his is going to present the case." The trial court denied the *Marsden* motion.

After several more continuances, Noguchi appeared on behalf of defendant on June 3, 2008, and declared a conflict of interest. Salvador Barajas of the alternate public defender's office was appointed to represent defendant, and the trial was continued once again.

Jury trial commenced on July 16, 2008, with defendant represented by Public Defender Barajas. On July 18, 2008, the jury found defendant guilty of second degree robbery and defendant admitted a prior conviction. He was sentenced to 11 years in prison. Defendant filed a timely notice of appeal.

## DISCUSSION

A.  *Defendant Did Not Make a* Marsden *Motion at His Arraignment*

Defendant contends the trial court prejudicially erred in failing to hold a *Marsden* hearing at his January 14, 2008 arraignment.[3] He argues that he made a *Marsden* motion at that proceeding. We agree with the trial court that defendant did not make a *Marsden* motion at that time.

"When a defendant seeks new counsel on the basis that his appointed counsel is providing inadequate representation—i.e., makes what is commonly called a *Marsden* motion [citation]—the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result. Substitution of counsel lies within the court's discretion. The court does not abuse its discretion in denying the motion unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel. [Citation.]" (*People v. Smith* (2003) 30 Cal.4th 581, 604 [134 Cal.Rptr.2d 1, 68 P.3d 302].)

But the duty to conduct an inquiry arises only when the defendant " 'asserts directly or by implication that his counsel's performance has been

---

[3] Defendant does not assert on appeal any error in the denial of his *Marsden* motion of May 21, 2008.

so inadequate as to deny him his constitutional right to effective counsel.' [Citation.]" (*People v. Leonard* (2000) 78 Cal.App.4th 776, 787 [93 Cal.Rptr.2d 180], italics omitted.)

Here, although defendant used the term "*Marsden* hearing" at his arraignment on January 14, 2008, upon further inquiry defendant clarified that what he was actually seeking was self-representation—not new counsel. Under these circumstances, the trial court was not required to hold a *Marsden* hearing.

B. *The Trial Court Did Not Err in Denying the Motion to Suppress*

Defendant contends the trial court erred in denying his motion to suppress. He argues that an unlawful traffic stop tainted the field identification that followed. We find that the traffic stop was not unlawful. Moreover, even if we were to find that the traffic stop was unlawful, the discovery that defendant was the subject of an arrest warrant removed the taint of the antecedent unlawful traffic stop.

" 'In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]' [Citation.] In evaluating whether the fruits of a search or seizure should have been suppressed, we consider only the Fourth Amendment's prohibition on unreasonable searches and seizures. [Citation.]" (*People v. Brendlin* (2008) 45 Cal.4th 262, 268 [85 Cal.Rptr.3d 496, 195 P.3d 1074] (*Brendlin*).)

■ When evidence comes to light as a result of an unlawful traffic stop, the trial court must perform an "attenuation analysis" to determine whether " 'the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the "taint" imposed upon that evidence by the original illegality.' [Citation.] 'Relevant factors in this "attenuation" analysis include the temporal proximity of the Fourth Amendment violation to the procurement of the challenged evidence, the presence of intervening circumstances, and the flagrancy of the official misconduct.' [Citation.]" (*Brendlin, supra*, 45 Cal.4th at p. 269.)

In *Brendlin*, the issue was whether evidence seized in a search incident to a lawful arrest based upon a valid outstanding warrant nonetheless must be

suppressed because the discovery of the warrant occurred during an unlawful traffic stop. (*Brendlin, supra,* 45 Cal.4th at p. 265.) Our Supreme Court held that, in the absence of purposeful or flagrant police misconduct, discovery of an outstanding arrest warrant attenuates the taint of an antecedent unlawful traffic stop. (*Id.* at pp. 265, 269.)

When a police officer sees a vehicle with tinted front and side windows, the officer may stop the car and cite the driver for a violation of Vehicle Code section 26708, subdivision (a). (*People v. Niebauer* (1989) 214 Cal.App.3d 1278 [263 Cal.Rptr. 287] (*Niebauer*).)

Here, at the hearing on defendant's motion to suppress, Deputy Sheriff Philip Fernandez testified that about 3:50 p.m. on December 14, 2007, he and his partner were on patrol in the area of the fast-food restaurant at which the robbery occurred when Fernandez heard a radio broadcast about the robbery; the suspect was described as a Black male in his late teens, early 20's, wearing a black sweatshirt and blue jeans. About five or 10 minutes later, Fernandez noticed a grey Jetta pulling out of an apartment complex. Fernandez's attention was initially drawn to the Jetta because it had tinted front windows, a Vehicle Code violation. Fernandez turned the patrol car around and drove past the Jetta. As he did so, Fernandez noticed that the person in the front passenger seat was a Black male in his late teens or early 20's, wearing blue jeans. The passenger was wearing a white T-shirt and not a dark sweatshirt, but Fernandez believed he matched the description of the robbery suspect. After following the Jetta as it pulled into a spot in the parking lot of a liquor store, Fernandez activated the lights of his patrol car. As Fernandez made contact with defendant, who was seated in the front passenger seat of the Jetta, Fernandez's partner made contact with the driver. Defendant stated that he was on probation for an armed robbery in San Diego. Because defendant admitted he was on probation for armed robbery, and there had just been a robbery in the neighborhood, Fernandez requested defendant's identification. When Fernandez ran defendant's identification through the computer system, he discovered that there was an outstanding warrant for defendant's arrest for armed robbery. Fernandez arrested defendant on the outstanding warrant. As Fernandez and his partner were transporting defendant to the Norwalk sheriff's station, Fernandez saw an officer from the Whittier Police Department. Fernandez flagged down the officer and told him that Fernandez might have a suspect for the recent robbery. The Whittier police officer contacted the officers at the scene and someone brought out a witness to make an identification. Fernandez then turned defendant over to the Whittier police.

Fernandez's testimony constituted substantial evidence that the traffic stop was supported by a reasonable suspicion of a Vehicle Code violation. (*Niebauer, supra,* 214 Cal.App.3d at p. 1292.)

Even if the initial traffic stop was not supported by reasonable suspicion, the trial court did not err in denying defendant's motion to suppress. This is because, under *Brendlin*, Fernandez's discovery of the outstanding arrest warrant attenuated the taint of the unlawful traffic stop. Accordingly, the trial court did not err in denying defendant's motion to suppress.

C. *Failure to Preinstruct the Jury with CALCRIM No. 101 Was Harmless Error*

■ Defendant contends he was denied his constitutional right to a fair and impartial jury as a result of the trial court's failure to instruct the jury as required by Penal Code section 1122, subdivision (a) (section 1122(a)). We conclude the trial court erred in not giving CALCRIM No. 101, the instruction that implements section 1122(a), but that the error was harmless.[4]

■ Generally, a trial court is afforded wide discretion in choosing when to instruct the jury. (§§ 1093, 1094; see also *People v. Chung* (1997) 57 Cal.App.4th 755, 758 [67 Cal.Rptr.2d 337].) In one instance, the Legislature has decreed that the trial court shall preinstruct the jury. (*People v. Smith* (2008) 168 Cal.App.4th 7, 15 [85 Cal.Rptr.3d 180].) That direction is found in section 1122(a) which provides: "After the jury has been sworn and before the people's opening address, the court shall instruct the jury generally concerning its basic functions, duties, and conduct. The instructions shall include, among other matters, admonitions that the jurors shall not converse among themselves, or with anyone else, on any subject connected with the trial; that they shall not read or listen to any accounts or discussions of the case reported by newspapers or other news media; that they shall not visit or view the premises or place where the offense or offenses charged were allegedly committed or any other premises or place involved in the case; that prior to, and within 90 days of, discharge, they shall not request, accept, agree to accept, or discuss with any person receiving or accepting, any payment or benefit in consideration for supplying any information concerning the trial; and that they shall promptly report to the court any incident within their knowledge involving an attempt by any person to improperly influence any member of the jury."

■ Although neither party has articulated the precise instruction that was omitted, the current version on the subject is found in CALCRIM No. 101. In general, the instruction implements the statutory obligation enacted in section 1122(a) by explaining "some basic rules of law and procedure" as described in the statute. According to the instruction itself, CALCRIM No. 101 is

---

[4] All future statutory references are to the Penal Code.

intended to "ensure that both sides receive a fair trial."[5] We have not been furnished with the entire trial court record—specifically some of the voir dire is missing—but the reporter's transcript furnished to us does not contain the instruction.[6]

Defendant contends on appeal that the failure to give the instruction is reversible per se. Respondent counters that not only is the error subject to appropriate harmless error analysis, in this case the claim has been waived since at trial defendant neither asked for the instruction nor objected to its omission. We take up these two procedural issues in converse order.

First, we observe that there are no appellate cases that address the consequences of a trial court's failure to instruct with CALCRIM No. 101 or otherwise fulfill the mandate of section 1122(a). The cases that mention the statute do so in passing and in the context of what constitutes juror misconduct. (See *People v. Wilson* (2008) 44 Cal.4th 758, 838–841 [80 Cal.Rptr.3d 211, 187 P.3d 1041]; *People v. Ledesma* (2006) 39 Cal.4th 641, 743 [47 Cal.Rptr.3d 326, 140 P.3d 657]; *People v. Stewart* (2004) 33 Cal.4th 425, 510 [15 Cal.Rptr.3d 656, 93 P.3d 271]; *People v. Loot* (1998) 63 Cal.App.4th 694, 697 [74 Cal.Rptr.2d 324].) By the terms of section 1122(a), CALCRIM No. 101 is an instruction which by statute must be given; it is not optional and the court has no discretion to refuse to give the instruction. (See 5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Trial, § 460, pp. 657–658 [the "court is required" to give the instruction].) As the Bench Notes to CALCRIM No. 101 (2008 re-rev.) (Fall 2009 ed.) page 4 state: "The court has a **sua sponte** duty to instruct the jurors on how they must conduct

---

[5] We see no need to recite the text of CALCRIM No. 101 or its predecessor, CALJIC No. 0.50. Both are lengthy and the parties neither cite the instructions nor discuss any particular words that should have been given. We observe that the Use Note to CALJIC No. 0.50 states in part: "Penal Code § 1122(a) requires that the court, after the jury has been sworn and before opening statements, instruct the jury generally concerning its basic functions, duties and conduct, specifically identifying certain admonitions. This instruction is intended to fulfill that role." (Use Notes to CALJIC No. 0.50 (2004 rev.) (Fall 2009 ed.) p. 6.)

[6] It is, of course, appellant's burden on appeal to present an adequate record for review and affirmatively to demonstrate error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) Here, the transcript of voir dire proceedings was not transcribed, apparently pursuant to a local court policy not to transcribe voir dire proceedings when there has been no challenge to jury selection (see *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]). Saving the cost and time of preparing unnecessary transcripts is an important consideration, although it must give way to the completeness of the record on appeal. Here, the failure to have transcribed voir dire is not fatal to appellant's point on appeal for two reasons: First, there is nothing that suggests the trial court would have given CALCRIM No. 101 while actually questioning the jurors, and it appears that only the voir dire itself was not transcribed. Second, section 1122(a) requires the preinstruction to be given "[a]fter the jury has been sworn and before the people's opening address." The transcript does report proceedings in which the court talked to the jury panel and opening statements of both counsel. No preinstruction appears before or afterwards.

themselves during the trial." The obligation to instruct sua sponte is often founded on a defendant's constitutional right to a fair trial (*People v. Prince* (2007) 40 Cal.4th 1179, 1264 [57 Cal.Rptr.3d 543, 156 P.3d 1015]), but this is not always so. Other mandatory instructions are required by statute, e.g., sections 1127 (jurors as the exclusive judges of facts and credibility of witnesses), 1127b (expert witnesses), 1127c (flight), 1127h (factors that may not influence a juror), or are based on other policy conditions (see *People v. Najera* (2008) 43 Cal.4th 1132, 1136–1137 [77 Cal.Rptr.3d 605, 184 P.3d 732] [accomplice testimony, corpus delicti included among sua sponte instructions]; *People v. Carter* (2003) 30 Cal.4th 1166, 1219 [135 Cal.Rptr.2d 553, 70 P.3d 981] [instructions on credibility, weighing conflicting testimony, expert testimony, accomplice testimony are normally required in all criminal cases "even in the absence of a request"]).

An instruction that must be given sua sponte—Latin for "on one's own accord" or "of one's own will"—is one that, by legal definition, requires " 'no trial court action by the defendant to preserve it.' " (*People v. Ervine* (2009) 47 Cal.4th 745, 771, fn. 12 [102 Cal.Rptr.3d 786, 220 P.3d 820]; *People v. Avila* (2006) 38 Cal.4th 491, 527, fn. 22 [43 Cal.Rptr.3d 1, 133 P.3d 1076].) Because CALCRIM No. 101 must be given sua sponte, we conclude that defendant's failure to request it or object to its omission did not forfeit his contention on appeal.

Respondent cites to *People v. Ramos* (2004) 34 Cal.4th 494, 531 [21 Cal.Rptr.3d 575, 101 P.3d 478] and *People v. Campbell* (1976) 63 Cal.App.3d 599 [133 Cal.Rptr. 815] to support its claim that the failure to object to the omission of an instruction under section 1122(a) forfeits the argument on appeal. These cases and others (e.g., *People v. Heishman* (1988) 45 Cal.3d 147, 175 [246 Cal.Rptr. 673, 753 P.2d 629]) deal not with section 1122(a) but with subdivision (b) of the statute. Subdivision (b) has its origins in the 1872 code and preceded subdivision (a) by more than a century. (See Historical and Statutory Notes, 50B West's Ann. Pen. Code (2004 ed.) foll. § 1122, p. 518.) Section 1122, subdivision (b) provides: "The jury shall also, at each adjournment of the court before the submission of the cause to the jury, whether permitted to separate or kept in charge of officers, be admonished by the court that it is their duty not to converse among themselves, or with anyone else, on any subject connected with the trial, or to form or express any opinion thereon until the cause is finally submitted to them."

Unlike section 1122(a), which requires the trial court to instruct the jury at the time and in the manner set out in the statute, subdivision (b) requires only an *admonition* in certain situations. Although the difference between an admonition and an instruction might be fodder for wordsmiths, the Legislature has made the distinction plain. The line of cases cited by respondent does

not compel forfeiture of the argument on appeal if a defendant has failed to object to the omission of CALCRIM No. 101 "at trial."[7]

We agree with respondent, however, that failure to give CALCRIM No. 101 is subject to harmless error analysis. Defendant cites *Neder v. United States* (1999) 527 U.S. 1, 8 [144 L.Ed.2d 35, 119 S.Ct. 1827] for the proposition that errors that affect the "framework" of the trial or that render the proceedings "fundamentally unfair" are reversible per se. *Neder* itself identified some of those errors—complete denial of counsel, racial discrimination in grand jury selection, denial of self-representation, denial of public trial, defective reasonable doubt instruction—but *Neder* did not deal with any of those situations. Rather, the Supreme Court held that the failure to instruct on an element of an offense was subject to harmless error under *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. (*Neder*, at p. 5.) There is no authority that failure to instruct with CALCRIM No. 101 is reversible error per se.

The parties disagree on whether the standard for assessing harmless error is under *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (not reasonably probable a more favorable result would have occurred) or *Chapman v. California, supra*, 386 U.S. at page 24 (harmless beyond a reasonable doubt). We need not resolve the dispute, for under either standard there is nothing in the record that suggests any prejudice at all to defendant by the court's failure to instruct with CALCRIM No. 101. The trial court did give the admonishment required by section 1122, subdivision (b) from time to time, and other instructions addressed some of the concepts covered by CALCRIM No. 101 (e.g., CALCRIM Nos. 200 [a duties of judge and jury], 201 [do not investigate], 222 [evidence], 3550 [predeliberation instructions]). Finally, the record does not disclose that anything occurred that might have adversely affected defendant's right to a fair trial and that likely would have been avoided if CALCRIM No. 101 had been given. Wholly aside from whether any actual juror misconduct occurred, there was nothing to suggest any juror spoke to anyone connected with the trial or with anyone else about the case, listened to any media reports, did any research, or accepted any payment for information about the case. The case was simple. The entire trial including opening and closing statements, testimony, instructions and deliberations took three days. The jury deliberated for slightly more than one hour. We are convinced beyond a reasonable doubt that the giving of CALCRIM No. 101 would have had no affect on this trial.

---

[7] The Legislature also knows the difference between an instruction that must be requested by a party and one that does not. For example, sections 1127a (in-custody informant), 1127f (witnesses under 10 years old), and 1127g (developmentally disabled witnesses) all provide for mandatory instructions but only "upon the request of a party." As we have observed, section 1122(a) contains no such predicate.

## DISPOSITION

The judgment is affirmed.

Bigelow, P. J., and Flier, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 9, 2010, S181507.