Filed 1/3/24  P. v. Hair CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT HAIR,<br><br>Defendant and Appellant. | F084831<br><br>(Super. Ct. No. BF185777A)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  John D. Oglesby and Colette M. Humphrey, Judges.[†]

Deanna L. Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Clara Levers and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[†]    Judge Oglesby ruled on defendant's suppression motion; Judge Humphrey sentenced defendant.

**SEE DISSENTING OPINION**

On June 5, 2021, defendant Robert Hair was pulled over by officers because he had tinted windows. During the stop, officers noticed ammunition and discovered that defendant was driving without a valid license. Defendant's vehicle was searched, and the officers found, among other things, a firearm and ammunition.

Defendant filed a motion to suppress the evidence obtained from the stop. The motion was denied, and defendant pled no contest to being a felon in possession of a firearm. On appeal, defendant contends that it was error to deny his motion to suppress. The People concede the motion should have been granted because the inventory search did not serve a community caretaking need. They did not address the claims regarding the initial stop and probable cause to search the vehicle. We reverse the judgment, vacate the order denying defendant's motion to suppress, and remand with directions to grant defendant's motion to suppress and conduct further proceedings consistent with this opinion.

## PROCEDURAL HISTORY

On July 15, 2021, the Kern County District Attorney filed an information charging defendant with felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1);[1] count 1); possession of an unregistered loaded firearm in a public place (§ 25850, subd. (c)(6); count 2); and felon in possession of ammunition (§ 30305, subd (a); count 3).

On February 4, 2022, defendant filed a motion to suppress evidence pursuant to section 1538.5, challenging the stop on June 5, 2021, defendant's prolonged detention, defendant's arrest, and the search of the vehicle. The trial court held a hearing on March 10, 2022, and denied the motion. On April 12, 2022, defendant filed a petition for a writ of mandate and prohibition with this court, challenging the denial of the motion to suppress and requesting a stay of the proceedings. Defendant's petition was denied, and

---

[1] All further undesignated statutory references are to the Penal Code unless otherwise stated.

2.

defendant appealed this denial to our Supreme Court. (*Hair v. Superior Court* (May 10, 2022, F084191) review den. July 20, 2022, S274702.)

Before our Supreme Court issued a ruling, defendant pled no contest to count 1, and the remaining counts were dismissed. Defendant was sentenced on August 23, 2022. Imposition of the sentence was suspended, and defendant was granted probation for a term of two years. One of the conditions of probation was that defendant serve the first 180 days of his probationary period in jail.[2]

On August 23, 2022, defendant filed a notice of appeal.

## FACTUAL SUMMARY

The following facts were provided during the testimony of the arresting officer, Alan Guardado, at the hearing on defendant's motion to suppress. No other witnesses were called, and no exhibits were entered into evidence. However, the parties stipulated that the detention or arrest was made without a warrant.

On June 5, 2021, Alan Guardado was a police officer with the Bakersfield Police Department. On June 5, 2021, at approximately 10:26 p.m., he was on patrol with his partner, Victor Coronado. As they were traveling southbound, Guardado noticed a vehicle driving next to him that had tinted windows. He testified that the tint was a violation of Vehicle Code section 26708, subdivision (a)(1). Guardado decided to conduct a traffic enforcement stop.

The driver of the vehicle eventually pulled over. In addition to the driver, the car had a passenger. Guardado approached on the driver side and spoke with the driver; Coronado approached on the passenger side and spoke with the passenger.

The driver was identified as defendant. Guardado noticed that defendant kept looking around, which caused Guardado to suspect that defendant was nervous.

---

[2] On the same date, defendant was granted probation for a term of two years and required to serve 180 days in jail as a condition of probation on an unrelated case. The sentence in the present case runs concurrent to the sentence in the unrelated case.

Coronado then told Guardado that he saw ammunition in the vehicle, which caused Guardado concern. Guardado attempted to get a better view, but it was difficult because of the "pretty dark" window tint.

Guardado repeatedly told defendant to exit the vehicle, but he did not. Defendant eventually opened the door, but he did not get out. Guardado grabbed defendant's left hand, and defendant stepped out slowly.

Because there was ammunition in the vehicle, Guardado believed it was possible that a firearm was in the vehicle as well. Guardado follows the same protocol every time ammunition is seen during a traffic stop. Defendant was placed in handcuffs and patted down. Defendant did not have a weapon on him. The passenger was also asked to exit the vehicle, but she was not placed in handcuffs because she was more cooperative.

Defendant was sat on a curb next to the patrol vehicle. At that point, Guardado conducted a records check and noticed that defendant had a suspended license. As Guardado had probable cause to believe that defendant was operating the vehicle illegally, Guardado decided he was going to impound the vehicle, and did so. At around this time, additional units arrived to assist.

Guardado informed his partners that he decided to impound the vehicle, and they conducted an inventory search of the vehicle. They located ammunition that was loaded in a magazine on the center console, a semiautomatic handgun tucked between the front passenger seat and the center console, a rifle round, a methamphetamine pipe, and a substance that Guardado suspected was methamphetamine. Guardado testified the search was conducted pursuant to established policies.

Guardado did not speak with the passenger, defendant's wife, to see if she could drive the vehicle from the scene. Guardado did not remember if the passenger had a valid license. The passenger was ultimately cited and released from the scene.

The Bakersfield Police Department has policies for impounding a vehicle. When an officer determines that a driver is driving on a suspended license, the officer can decide if the vehicle should be impounded for public safety.

Public safety was a concern because defendant was driving illegally. Public safety was also a concern because of the ammunition, and because there might have been a firearm in the vehicle. However, Guardado testified that neither owning ammunition nor owning or transporting a firearm is per se illegal. Guardado decided to impound the vehicle even though defendant's wife was the passenger because she allowed defendant to drive the vehicle with a suspended license, and Guardado believed that she would probably have allowed defendant to do so again. Guardado did not have any other reasons for impounding the vehicle.

After the search, Guardado placed defendant in the back seat of his patrol vehicle. The interaction, from the time of the stop until defendant was placed in the back of Guardado's car, lasted approximately 15 to 20 minutes.

## TRIAL COURT'S RULING

The trial court denied the motion to suppress.

The trial court held that "the officer's testimony that a magazine indicates the presence of a firearm is sufficient for him to search the vehicle." This holding appears to be based, at least in part, on the fact that the firearm was concealed.

The trial court also held that the case of *People v. Butler* (1988) 202 Cal.App.3d 602 (*Butler*) is not "controlling on the issue of an officer's legal authority to conduct a traffic stop for tinted windows," and instead, "the officer has the ability to make a judgment call on what he thinks is an inappropriate amount of tint and he doesn't have to do much more than say I thought it was illegal tint or thought it was a reason to stop the car."

5.

As to the inventory search, the trial court held that under applicable case law, inventory searches cannot be used "capriciously," and there was not capricious use of an inventory search here.

As to the alleged prolonged detention, the trial court held that the inventory search, which took 15 to 20 minutes, was not unnecessarily or unusually prolonged. "[The officer] ordering the individual out with the seeing of a magazine, which in his mind suggests the possibility of a firearm, for officer safety reason is not unreasonable. And to handcuff him and detention under those circumstances is not unreasonable."

## DISCUSSION

### I. Standard of Review

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review." (*People v. Ramos* (2004) 34 Cal.4th 494, 505.)

### II. Analysis

"A traffic stop is a seizure subject to the protections of the Fourth Amendment of the United States Constitution." (*People v. Nice* (2016) 247 Cal.App.4th 928, 937.) The police may conduct a traffic stop if the circumstances show " 'at least reasonable suspicion that the driver has violated the Vehicle Code or some other law.' " (*People v. Durazo* (2004) 124 Cal.App.4th 728, 734–735.) Reasonable suspicion exists "when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.) The courts look at the totality of the circumstances to determine whether there was a particularized and objective basis for the officer's suspicion. (*People v. Butler* (2003)

6.

111 Cal.App.4th 150, 160.) "Although an officer's reliance on a mere ' "hunch" ' is insufficient to justify a stop, [citation], the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." (*United States v. Arvizu* (2002) 534 U.S. 266, 274.)

If the stop does not meet this test, any resulting search or seizure violates the detainee's Fourth Amendment rights and a motion to suppress any evidence obtained pursuant thereto must be granted. (*Wong Sun v. United States* (1963) 371 U.S. 471, 484–485; *People v. McWilliams* (2023) 14 Cal.5th 429, 434 ["As a general rule, evidence seized as a result of an unlawful search or seizure is inadmissible against the defendant in a subsequent prosecution."].)

Defendant argues that "[t]he officer's bare statement that [defendant's] windows were illegally tinted was insufficient under the Fourth Amendment to justify the vehicle stop." The People do not address this argument. We find that defendant is correct.[3]

Here, the officer decided to stop defendant's vehicle because the officer "noticed a vehicle next to [him] which had tinted windows, which is a violation of Vehicle Code [section] 26708[, subdivision] (a)…(1)." No other justification was given.

First, the officer was incorrect that having tinted windows is a per se violation of the Vehicle Code. Vehicle Code section 26708, subdivision (a)(1) states: "A person shall not drive any motor vehicle with any object or material placed, displayed, installed, affixed, or applied upon the windshield or side or rear windows." Additionally, subdivision (a)(2) prohibits driving "any motor vehicle with any object or material placed, displayed, installed, affixed, or applied in or upon the vehicle that obstructs or reduces the driver's clear view through the windshield or side windows." However,

---

[3]    As we hold that the vehicle stop violated the Fourth Amendment, we need not and do not address the other arguments raised by defendant.

"[t]his section does not apply" to "[s]ide windows that are to the rear of the driver." (*Id.*, subd. (b)(4).) Additionally, the Vehicle Code provides for exceptions generally allowing tinted front windows that have a minimum visible light transmittance of 70 percent. (See *id.*, subd. (d); *People v. Niebauer* (1989) 214 Cal.App.3d 1278, 1291–1292 (*Niebauer*).)[4] Thus, having tinted windows is not per se illegal, and does not by itself support a traffic stop.

Second, appellate courts have held that an officer's testimony that the tint illegally obscures the window(s), without more, is insufficient to support a stop. In *Butler*, the officer who conducted a traffic stop saw that the "side and rear windows [of defendant's vehicle] were darkened." (*Butler*, *supra*, 202 Cal.App.3d at p. 604.) The trial court denied defendant's motion to suppress based on the testimony regarding the window tint. (*Id.* at pp. 605–606.) On appeal, the Sixth District "disagree[d] with the People's suggestion that seeing someone lawfully driving with tinted glass raises a reasonable suspicion of illegality such that a reasonable inquiry is justified. Without *additional articulable facts* suggesting that the tinted glass is illegal, the detention rests upon the type of speculation which may not properly support an investigative stop." (*Id.* at p. 607, italics added.) That the vehicle's windows were darkened did not suggest that the officer "had a reasonable suspicion that the windows in the [vehicle] were made of illegally tinted, rather than legally tinted, safety glass." (*Id.* at p. 606.)

In *Niebauer*, *supra*, 214 Cal.App.3d 1278, an officer testified that he initiated the traffic stop because "the windows were darker than normal and he could only see [the defendant's] outline through the window." (*Id.* at p. 1292.) The officer further testified that "he had stopped other drivers with the same type of tinting material on their vehicle windows and those drivers had to roll down their windows at night in order to see where they were turning." (*Id.* at p. 1293.) On appeal, the Fourth District noted in dicta that

---

[4]    No party argues that any good faith exception applies.

"the facts presented would also justify … a stop in this case. [The officer] testified to *additional facts* giving him reasonable suspicion [the defendant] was driving with illegally tinted windows other than merely the bare statement [the defendant's] truck had tinted windows." (*Id*. at p. 1293, fn. 10, italics added.) More recently, in *People v. Roberts* (2010) 184 Cal.App.4th 1149, the Fourth District upheld the constitutionality of a stop based on tinted windows where the officer testified that he "noticed he could not see through the driver's tinted side window from the open passenger side window," and "believed the view from the windows was obstructed by the tint in violation of Vehicle Code section 26708.5, subdivision (a)." (*Id*. at p. 1190.) In so holding, the court found that "the underlying facts for the stop were *specific* and reliable." (*Id*. at p. 1191, italics added.)

Likewise, in *People v. Hanes* (1997) 60 Cal.App.4th Supp. 6, 8, the arresting officer testified that the front right window of the defendant's black vehicle was " 'so black that it kind of matched the color of the car.' He also testified that he was unable to see the occupants of the vehicle." On that basis, the trial court denied the motion to suppress. (*Ibid*.) On appeal, the court concluded that the arresting officer's testimony provided the kind of additional articulable facts required by the court in *Butler*. (*Id*. at pp. 9–10.)

Here, discussing his observation of defendant's vehicle prior to initiation of the traffic stop, Officer Guardado only stated that the windows were illegally tinted. He did not testify as to any specific articulable facts suggesting that the tint was illegal, such as that he had difficulty seeing through a front window, prior to initiation of the traffic stop.[5] Accordingly, under the standard described above, the record does not support the trial court's finding that the officer had reasonable suspicion to stop defendant.

---

[5] After stopping defendant and getting out of his car, the officer did attempt to look through the front driver-side window, but the tint was "pretty dark." However, there is no evidence or argument that this same observation was made prior to making the traffic

We acknowledge that in *People v. Carter* (2010) 182 Cal.App.4th 522, the Second District held that "[w]hen a police officer sees a vehicle with tinted front and side windows, the officer may stop the car and cite the driver for a violation of Vehicle Code section 26708, subdivision (a)." (*Id*. at p. 529.) However, there was no analysis supporting this holding, despite the fact that it contradicts the holding in *Butler*. Moreover, *Carter* relied on *Niebauer* to support its holding (*ibid*.), even though, as discussed above, *Niebauer*'s analysis relied on the existence of additional facts beyond the windows merely having been tinted. Accordingly, we decline to follow *Carter* and instead follow *Butler* and *Niebauer*.

As there were no specific articulable facts suggesting that the tinted glass was illegal, the stop violated defendant's Fourth Amendment rights. Accordingly, all evidence obtained pursuant to the stop must be suppressed.[6]

## DISPOSITION

The judgment is reversed. The March 10, 2022 order denying the motion to suppress evidence is vacated. The trial court is directed to enter a new order granting the motion and to conduct other proceedings consistent with this opinion.

SNAUFFER, J.

I CONCUR:


PEÑA, J.

---

stop. The officer did not testify as to which window(s) he observed prior to initiating the traffic stop.

[6]     The People do not argue that the error was harmless. Moreover, as it appears that all of the evidence against defendant came from the unconstitutional search, we do not find the error harmless.

10.

POOCHIGIAN, Acting P. J., Dissenting.

Everyday police officers pull over drivers for Vehicle Code violations. These traffic stops, which are far less intrusive than an arrest or incarceration, need only be justified by an officer's "reasonable suspicion" that the law has been broken. "Reasonable suspicion is a low threshold" requiring only " ' "some minimal level of objective justification." ' " (*U.S. v. Castillo* (5th Cir. 2015) 804 F.3d 361, 367.) Rarely, if ever, does the law require an officer's reasonable suspicion to be based on more than his or her own observations and a suspicion based thereon.

The majority opinion raises the reasonable suspicion standard above the "low threshold" it was meant to be. Therefore, I respectfully dissent.

## DISCUSSION

### *Standard of Review*

On review of a suppression ruling under Penal Code section 1538.5, " '[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Garry* (2007) 156 Cal.App.4th 1100, 1106.)

### *Reasonable Suspicion*

A traffic stop need only be justified by reasonable suspicion that a law has been broken. (*People v. Rodriguez* (2006) 143 Cal.App.4th 1137, 1148.) "Reasonable suspicion is a low threshold" requiring only " ' "some minimal level of objective justification." ' " (*U.S. v. Castillo*, *supra*, 804 F.3d at p. 367.) Circumstances can give rise to reasonable suspicion even if they do not "rule out the possibility of innocent conduct." (*United States v. Arvizu* (2002) 534 U.S. 266, 277.) As a result, "a traffic stop will not violate the Fourth Amendment if the officer making the stop reasonably suspects

the violation of a traffic law even if later investigation dispels that suspicion." (*People v. Rodriguez*, at p. 1149.)

### *Vehicle Code and Tinting*

Unless an exception applies, it is a Vehicle Code violation to drive a vehicle with *any* material installed, affixed, or applied to the windshield, side window, or rear window. (Veh. Code, § 26708, subd. (a)(1).) One exception is that "clear, colorless, and transparent material" may be used in certain circumstances, one of which is that the material meets certain federal standards and permits light transmittance of at least 70 percent. (*Id.*, subd. (e)(2).)

### *Analysis*

Here, Officer Guardado observed a car had windows that were tinted in violation of Vehicle Code section 26708, subdivision (a)(1). The trial court concluded this testimony was sufficient, holding an officer "doesn't have to do much more than say I thought it was illegal tint …."

The trial court was exactly right. An officer's observation of window tinting that he believes to be illegal is enough to make a prima facie[1] showing of reasonable suspicion. Police officers enforcing Vehicle Code section 26708 can, based on their observations, "form an opinion as to whether or not the tinting on the windows obscures the light below the 70 percent margin." (*People v. Niebauer* (1989) 214 Cal.App.3d 1278, 1292.)

The majority observes that Officer Guardado only said the windows were illegally tinted but did not lay out "articulable facts suggesting the tint was illegal." (Maj. opn., *ante*, at p. 10.) But the relevant threshold for illegality here is visual in nature – i.e., whether the tint is too opaque. Thus, the officer's visual observation of tinting that

---

[1] Of course, defendants are always free to use cross-examination to attempt to draw out additional facts suggesting the officer's suspicion was actually unreasonable. Also, a trial court is entitled to find that the officer's testimony is not credible.

2

appeared illegal *is* the articulable fact.[2]  To paraphrase the trial court, an officer does not have to do more than simply say, "I saw the tint and it looked to be illegal."[3]

In this respect, I disagree with *People v. Butler* (1988) 202 Cal.App.3d 602 and lean towards *People v. Carter* (2010) 182 Cal.App.4th 522, 529.  In *Carter*, the court observed that "[w]hen a police officer sees a vehicle with tinted front and side windows, the officer may stop the car and cite the driver for a violation of Vehicle Code section 26708, subdivision (a)." (*Ibid.*)

The majority criticizes *Carter* because there was "no analysis" supporting its holding, even though it contradicted *Butler*.  (Maj. opn., *ante*, at p. 10.)  But one could say something similar about *Butler*, which only offered a few conclusory sentences in support of its holding.  (See *People v. Butler*, *supra*, 202 Cal.App.3d at p. 607.)  In any event, *Carter* is correct to acknowledge that an officer's bare observation can supply reasonable suspicion that a vehicle's windows are illegally tinted.[4]

The reasonable suspicion standard does not permit courts to require anything more. For these reasons, I respectfully dissent.

POOCHIGIAN, Acting P. J.

---

[2]    In this respect, the present situation is different from those where a police officer's observations lead him to suspect that an *unseen* crime may have been committed.  For example, it would be insufficient for a police officer to testify, "I observed individuals acting suspiciously, which lead me to think they may have recently completed a drug deal."  Courts would require the officer to articulate the specific observations that roused suspicion.

[3]    This would be a sufficient *prima facie* showing of reasonable suspicion.  It is conceivable a defendant might respond, for example, by putting on evidence that there was no tinting on the vehicle whatsoever.  And on that basis, a trial court might decide to reject the officer's testimony and find the stop unjustified.  Here, the trial court credited the officer's testimony.

[4]    I would add one qualification to *Carter*'s language and posit that "when a police officer sees a vehicle with tinted front and side windows, *and reasonably suspects the tinting violates the Vehicle Code*, the officer may stop the car."

3