Filed 6/28/24  P. v. Sturgis CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LARENCE LEONARD STURGIS,<br><br>    Defendant and Appellant. | C098617<br><br>(Super. Ct. No. 21FE010736) |

After his motion to suppress was denied, defendant Larence Leonard Sturgis pled guilty to being a felon in possession of a firearm.  The trial court sentenced him to two years eight months in prison.  On appeal, Sturgis argues the gun and ammunition found in his pocket should be suppressed because both the traffic stop and subsequent frisk were not supported by reasonable suspicion.  We conclude the record does not contain sufficient articulable facts to support reasonable suspicion for the traffic stop and will reverse.

1

BACKGROUND

The information alleged Sturgis was a felon in possession of a firearm and ammunition. (Pen. Code, §§ 29800, subd. (a)(1), 30305, subd. (a)(1).) It also alleged Sturgis had a prior strike conviction. (*Id.*, §§ 667, subds. (b)-(i), 1170.12.)

Pursuant to Penal Code section 1538.5, Sturgis moved to suppress the gun and ammunition officers found in his pocket. At the suppression hearing held in conjunction with the preliminary hearing, Officer Conner Mills testified he had worked for the Sacramento Police Department for five and a half years and was assigned to the north gang enforcement team. Officer Mills reported he encountered many firearms in his job and there had been a recent trend of people carrying firearms in cross-body style satchels.

On the date of this arrest, Officer Mills, Officer Derek Goetting, and Sergeant Zach Eaton were on a routine patrol in the north area of Sacramento at about 1:30 p.m. Officer Mills noticed three people (a woman, Sturgis, and a man (H.B.)) standing in front of a tire shop that was next to a nearby liquor store. H.B. was wearing a cross-body style satchel. Officer Mills testified, "As we drove past, it appeared they became fixated on our presence and kind of started walking in different directions."

The man wearing the cross-body style satchel (H.B.) went into the liquor store. Officer Mills was not sure if the satchel was zipped up when H.B. went in, but when he came out it was unzipped. Sergeant Eaton went into the liquor store to look around but there is no evidence in the record that anything was found.

The three people got into a car. The woman was in the driver seat. Sturgis was in the front passenger seat, and H.B. was in the back passenger seat.

As Officers Mills and Goetting walked up to the car, the car drove off. Because the officers were not sure that the three people in the car saw them approach, the officers could not tell if they were just trying to drive away or drive away from them.

The officers got into their patrol car, followed the car, and made an enforcement stop. Officer Mills testified he effected a traffic stop on the car because it "had window

2

tint affixed to the front driver window and passenger window." When asked, "And what's wrong with having window tint affixed to those two windows that you mentioned," Officer Mills responded, "It makes it difficult to see inside the vehicle, not only for other people, but also for the driver. It obscures their vision looking out the windows, especially at certain times — at night." On cross-examination the officer testified it was his opinion that having tint on your front windows is illegal under state law.

Officer Mills contacted the female driver. While he did so, he saw a beer can in the back seat. When it was handed to him, he noted it was about one-third full and smelled like alcohol. Officer Goetting conducted a records check and determined the driver had a suspended license and Sturgis had a history of firearm-related charges. Officer Mills decided to have the driver step out of the car to conduct a probable cause search of the car based on the open container of alcohol. Officer Goetting searched H.B.'s satchel and found no firearms inside of it. Officer Goetting also asked Sturgis to step out of the car and during a brief patdown search discovered a loaded handgun that had three bullets in the magazine. Sturgis said he found the handgun somewhere in the North Sacramento area.

A brief 24-second body camera video of the patdown was submitted into evidence. Despite that the video shows there were three officers involved, each with a body camera, this was the only footage the People introduced at the hearing. During the colloquy with counsel, the trial court said it had reviewed the video of the stop that showed the front passenger window rolled down with only "1 to 2 inches, or so, protruding from the door." The trial court described that window as tinted and later described the windows as appearing "to be somewhat darker than clear but they're not black." We have viewed the video as well. It shows the front passenger window almost all the way down with only a little over an inch showing above the doorsill. We can see through the window.

3

After briefing and oral argument, the trial court summarized the issue as follows: "The officers testified they observed the vehicle traveling with dark film attached or tinting to the front driver and passenger side windows in violation of Vehicle Code Section 26708. The prosecution claimed that for this reason the officers lawfully effectuated a traffic stop of the vehicle and detained the occupants within while the officers investigated the violation. [¶] The defense contends the stop was unlawful because there was insufficient evidence of window tinting or the nature of the tinting to justify [the] stop." The trial court stated it did not appear any Court of Appeal has published an opinion under the current statutes as to whether an officer can stop a vehicle that has a front driver and passenger window that is not clear, not colorless, or not transparent. The trial court found the fact that this window was not clear, not colorless, and not transparent was a legal basis for the officers to stop the car and denied the motion to suppress.[1]

On January 26, 2022, Sturgis filed a motion to dismiss the information under Penal Code sections 995 and 1538.5, subdivision (i). On June 16, 2022, the trial court denied that motion. Sturgis then pled no contest to being a felon in possession of a firearm and admitted his prior strike conviction. On May 17, 2023, the trial court sentenced him to two years eight months in prison. Sturgis timely appealed.

## DISCUSSION

Sturgis argues the traffic stop based on tinted windows was not supported by reasonable suspicion and as a result the evidence of the gun must be suppressed. We agree.

---

[1] The trial court also discussed the legality of the patdown search, but as this case turns on the propriety of the stop, we will not discuss that finding.

A.    *Standard of Review*

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts to determine whether the law as applied has been violated.  [Citation.]  We review the court's resolution of the factual inquiry under the deferential substantial evidence standard."  (*People v. Ramos* (2004) 34 Cal.4th 494, 505.)  " 'We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' "  (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232.)

B.    *Analysis*

"A traffic stop is a seizure subject to the protections of the Fourth Amendment of the United States Constitution."  (*People v. Nice* (2016) 247 Cal.App.4th 928, 937.)  The police may conduct a traffic stop if the circumstances show " 'at least reasonable suspicion that the driver has violated the Vehicle Code or some other law.' "  (*People v. Durazo* (2004) 124 Cal.App.4th 728, 734-735.)  Reasonable suspicion exists "when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity."  (*People v. Souza* (1994) 9 Cal.4th 224, 231.)  At the trial court level, it is the People's burden to demonstrate the legality of the stop.  (See *People v. Williams* (1999) 20 Cal.4th 119, 128.)  "Although an officer's reliance on a mere ' "hunch" ' is insufficient to justify a stop, [citation], the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard."  (*United States v. Arvizu* (2002) 534 U.S. 266, 274.)

If the stop does not meet this test, any resulting search or seizure violates the detainee's Fourth Amendment rights and a motion to suppress any evidence obtained pursuant thereto must be granted.  (*People v. McWilliams* (2023) 14 Cal.5th 429, 434

5

["As a general rule, evidence seized as a result of an unlawful search or seizure is inadmissible against the defendant in a subsequent prosecution"].)

Sturgis argues that the windows appearing darkened was by itself insufficient to amount to reasonable suspicion of illegal tinting. The People counter arguing the window tint was not clear, colorless, and transparent thus, the affixed tint described by the officer is a violation of the Vehicle Code. We conclude Sturgis is correct.

The People argue that "the *affixed* tint is the issue at bar, and not the tint of the 'windows themselves.' " However, the blanket assertion that having any tint "affixed" to a car window is a violation of the Vehicle Code is inaccurate. To the contrary, the statutory scheme is centered, in large part, on the actual degree of tint because not all tints are illegal, as windows tinted with certain light transmittance are permitted. Vehicle Code[2] section 26708, subdivision (d)(1) and (2) appear to provide that having tinted material applied or affixed is only impermissible if the visible light transmission is less than 88 or 70 percent, respectively. (See Sen. Com. on Transportation, Rep. on Assem. Bill No. 2320 (1997-1998 Reg. Sess.) as amended Feb. 19, 1998.) Officer Mills did not provide any articulable facts indicating that the tint affixed was darker than permitted by statute.

Contrary to the trial court's description, Officer Mills did not testify the car had a *dark* film or tinting on the window; he did not testify at all about the coloring or shading. Instead, the officer testified he stopped the car Sturgis was a passenger in because "[i]t had window tint affixed to the front driver window and passenger window." When asked why having window tinting was a problem, the officer responded broadly: "It makes it difficult to see inside the vehicle, not only for other people, but also for the driver. It obscures their vision looking out the windows, especially at certain times -- at night." The nature of the question, the fact that the windows were mostly rolled down, and

---

[2] Undesignated statutory references are to the Vehicle Code.

6

Officer Mills's response make it ambiguous at best as to whether the officer was talking about car windows with tinting in general or this particular car's windows. Because the window visible in this record was almost all the way down, it is not possible any tinting made seeing into this car difficult. There were no specific articulable facts testified to as to whether Officer Mills's ability to see into the car was obscured in any way, nor any facts provided about the degree of tint on the windows.

With no specificity about the degree of tint, it is inaccurate to blanketly assert that window tint that is not clear, colorless, and transparent, violates the Vehicle Code and the officer was incorrect that having tinted windows is a per se violation of the Vehicle Code. Section 26708, subdivision (a)(1) states: "A person shall not drive any motor vehicle with any object or material placed, displayed, installed, affixed, or applied upon the windshield or side or rear windows." Additionally, section 26708, subdivision (a)(2) prohibits driving "any motor vehicle with any object or material placed, displayed, installed, affixed, or applied in or upon the vehicle that obstructs or reduces the driver's clear view through the windshield or side windows." But the Vehicle Code provides for exceptions generally, as noted above, allowing "clear, colorless, and transparent material" designed "to block the sun's harmful ultraviolet A rays" may be affixed to the front side windows if the "material has a minimum visible light transmittance of 88 percent" and the "window glazing with the material applied meets [the federal] . . . specified minimum light transmittance of 70 percent . . . ." (§ 26708, subd. (d)(1)-(3); *People v. Niebauer* (1989) 214 Cal.App.3d 1278, 1291-1292.) Thus, having tint on windows is not per se illegal, and does not by itself support a traffic stop. Relying on the fact of tint alone to provide reasonable suspicion, without testimony about the degree of tint, would improperly shift the burden to the defendant to prove the officer lacked reasonable suspicion. Instead, the officer must provide something more to demonstrate the tint is of the type prohibited by the Vehicle Code and the officer here did no such thing.

Appellate courts have held that an officer's testimony that window tint is illegal, without more, is insufficient to support a stop. For example, in *People v. Butler* (1988) 202 Cal.App.3d 602, 604, the officer who conducted a traffic stop saw that the "side and rear windows [of the defendant's vehicle] were darkened." The trial court denied the defendant's motion to suppress based on the testimony regarding the window tint. (*Id.* at pp. 605, 607.) On appeal, the appellate court "disagree[d] with the People's suggestion that seeing someone lawfully driving with tinted glass raises a reasonable suspicion of illegality such that a reasonable inquiry is justified. Without additional articulable facts suggesting that the tinted glass is illegal, the detention rests upon the type of speculation which may not properly support an investigative stop." (*Id.* at p. 607.) The simple fact the car's windows were darkened did not suggest that the officer "had a reasonable suspicion that the windows in the [vehicle] were made of illegally tinted, rather than legally tinted, safety glass." (*Id.* at p. 606.)

In *People v. Niebauer, supra,* 214 Cal.App.3d 1278, an officer testified that he initiated the traffic stop because "the windows were darker than normal and he could only see [the defendant's] outline through the window." (*Id.* at p. 1292.) The officer further testified that "he had stopped other drivers with the same type of tinting material on their vehicle windows and those drivers had to roll down their windows at night in order to see where they were turning." (*Id.* at p. 1293.) On appeal, the Court of Appeal noted in dicta that "the facts presented would also justify . . . a stop in this case. [The officer] testified to additional facts giving him reasonable suspicion [the defendant] was driving with illegally tinted windows other than merely the bare statement [the defendant's] truck had tinted windows." (*Ibid.*, fn. 10.)

More recently, in *People v. Roberts* (2010) 184 Cal.App.4th 1149, the appellate court upheld the constitutionality of a stop based on tinted windows where the officer testified he "could not see through the driver's tinted side window from the open passenger side window," and "believed the view from the windows was obstructed by the

8

tint in violation of Vehicle Code section 26708.5, subdivision (a)." (*Id.* at p. 1190.) In so holding, the court found that "the underlying facts for the stop were specific and reliable." (*Id.* at p. 1191.)

Likewise, in *People v. Hanes* (1997) 60 Cal.App.4th Supp. 6, 8, the arresting officer, who had conducted 400 traffic stops based on suspicion of illegal window tinting, testified that the front right window of the defendant's black car was " 'so black that it kind of matched the color of the car.' He also testified that he was unable to see the occupants of the vehicle." On that basis, the trial court denied the motion to suppress. (*Ibid.*) On appeal, the appellate department of the superior court concluded that the arresting officer's testimony provided the kind of additional articulable facts required by the court in *Butler*. (*Id.* at pp. 9-10.)

Here, the People presented no additional articulable facts suggesting the tinted glass was illegal here. The solitary observation presented to the trial court of the vehicle Sturgis was in prior to initiation of the traffic stop was that the windows were tinted. Officer Mills did not testify as to any specific articulable facts suggesting that the tint was illegal, such as that he had difficulty seeing through the window, or that the window was demonstrably dark. This is all the more true here given that at the time he stopped the car, the front passenger window was rolled down almost completely. Officer Mills's generalized comment that tints make looking inside a car difficult could not have referenced this car as the only window shown in the record was rolled down almost all the way, such that it would not have affected any view into the car. Accordingly, the record does not support the trial court's finding that the officer had reasonable suspicion to stop Sturgis.

We acknowledge that in *People v. Carter* (2010) 182 Cal.App.4th 522, the Second District held that "[w]hen a police officer sees a vehicle with tinted front and side windows, the officer may stop the car and cite the driver for a violation of Vehicle Code section 26708, subdivision (a)." (*Id.* at p. 529.) That court included no analysis to

9

support this holding, but merely cited *Niebauer*, even though *Carter* contradicts the holding in *Butler*.  As we have already noted, *Niebauer*'s analysis relied on the existence of additional facts beyond the windows merely having been tinted.  Accordingly, we decline to follow *Carter* and instead follow *Butler* and *Niebauer*.

Because the record contains no specific articulable facts suggesting that the tinted glass was illegal, this stop violated Sturgis's Fourth Amendment rights.  Accordingly, all evidence obtained pursuant to the stop must be suppressed.[3]

DISPOSITION

The judgment is reversed, and the matter is remanded.  On remand, the trial court shall vacate its June 16, 2022 order denying Sturgis's motion to suppress and enter a new order granting that motion, and shall conduct further proceedings consistent with this opinion.

/s/
BOULWARE EURIE, J.

I concur:

/s/
ROBIE, Acting P. J.

---

[3] Given our conclusion the traffic stop was not supported by reasonable suspicion, we decline to address Sturgis's arguments concerning the propriety of the officer's protective frisk of Sturgis.

10

RENNER, J., Dissenting.

The majority suggests having tint affixed to a front driver and passenger window may not violate the Vehicle Code because "section 26708, subdivision (d)(1) and (2) appear to provide that having tinted material applied or affixed is only impermissible if the visible light transmission is less than 88 or 70 percent, respectively." (Maj. Opn. *ante*, at p. 6.) This is a misstatement of the law. Vehicle Code section 26708, subdivision (d) allows only a "clear, colorless, and transparent material" to be affixed to the windows at issue and only if the material also meets each the following additional conditions:

"(1) The material has a minimum visible light transmittance of 88 percent.

"(2) The window glazing with the material applied meets all requirements of Federal Motor Vehicle Safety Standard No. 205 (49 C.F.R. 571.205), including the specified minimum light transmittance of 70 percent and the abrasion resistance of AS-14 glazing, as specified in that federal standard.

"(3) The material is designed and manufactured to enhance the ability of the existing window glass to block the sun's harmful ultraviolet A rays." (Veh. Code, § 26708, subd. (d).)

It has long been settled that tint that is affixed to a window cannot satisfy these requirements. (*People v. Niebauer* (1989) 214 Cal.App.3d 1278, 1292.) At a minimum, a tint that is affixed to the window as opposed to a safety glass and/or glaze cannot meet the applicable federal standards. (*Id.* at p. 1291 & fn. 8.) The majority has failed to acknowledge their departure from settled law on this point. (See *id.* at p. 1292 ["If an officer forms an opinion in a commonsense examination of a vehicle that there is a film placed upon the vehicle's windows in an unauthorized place . . . such evidence will be sufficient to support conviction under [Vehicle Code] section 26708[, subdivision ](a) if the trial court believes the officer; no further evidence or scientific testimony need be presented"].)

1

The majority relies on *People v. Butler* (1988) 202 Cal.App.3d 602, which noted that tinted windows are not necessarily unlawful if the windows are "made of the type of tinted glass meeting the requirements of subdivision (b) of Vehicle Code section 26708.5." (*Id.* at p. 606.) (Maj. Opn. *ante*, at p. 8.) There, the court found no facts in the record to suggest that the officer "had a reasonable suspicion that the windows in the Cadillac were made of illegally tinted, rather than legally tinted, safety glass." (*Butler, supra,* at p. 606.) *Butler* is distinguishable because here it is undisputed the tint was affixed, which would preclude the possibility that what the officer saw was tinted safety glass in compliance with Vehicle Code section 26708.5, subdivision (b). The majority's analysis misses the distinction between tinted safety glass and affixed tint. (E.g., Maj. Opn. *ante*, at p. 9 ["Here, the People presented no additional articulable facts suggesting the tinted glass was illegal here"].) For this reason, I dissent.


                                              /s/
                                    RENNER, J.